## CREST INVESTMENT TRUST, INC. *v.* THE ATLANTIC MOBILE CORPORATION

[No. 88, September Term, 1968.]

*Decided February 5, 1969.*

The cause was argued before HAMMOND, C. J., and McWIL-LIAMS, FINAN, SINGLEY and SMITH, JJ.

*Sidney Kaplan* for appellant.

*Charles L. Shuman,* with whom was *John G. Noppinger* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Atlantic Mobile Corporation, which sells and leases trailers throughout the County, and Crest Investment Trust, Inc., which lends money, are each claiming the same office trailer. Atlantic on March 12, 1964, entrusted the trailer to Pinedale Construction Co. under a written lease agreement, containing an option to purchase, which was never recorded or filed, and Pinedale on April 29, 1964, borrowed money from Crest, giving it a security agreement which listed as part collateral the trailer in question. On May 1, Crest duly filed a financing statement cov-

erning inter alia "new or used * * * trailers or semi-trailers of all makes and models." Pinedale did not meet the terms of its security agreement with Crest, and Atlantic repossessed the trailer. Crest sued *Atlantic* in the Circuit Court for Baltimore County for conversion of the trailer. Judge Menchine held (1) that the issue and outcome of the litigation were controlled by Code (1964 Repl. Vol.), Art. 95B (the Uniform Commercial Code), § 1-201 (37), reading in applicable part as follows:

> *"'Security interest'*, means an interest in personal property or fixtures which secures payment or performance of an obligation * * *. Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest' * * *. Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security,"

and (2) that the lease agreement between Atlantic and Pinedale was a lease and not a security instrument because it required payment by Pinedale at the last time it could exercise its option of $1,960 on a $3,400 trailer and that "this is hardly within the statutory phrase 'for no additional consideration or a nominal consideration.'" He gave judgment for Atlantic and we think the judgment must be affirmed.

There are relatively few cases directly in point. The pertinent law is well summarized in an opinion of a Referee in Bankruptcy of the United States District Court for the Western District of Michigan in the case of *In re Alpha Creamery Co., Inc.*, 4 UCC Reporting Service 794, finding that a lease of a typewriter accounting machine was a true lease which did not require filing. The referee said:

> "If the purchase option was exercised after the first year and just before the lease expired, the purchase

price would be $4,690.00 less 70% of lease rental plus the deposit of $234.50 or a total credit of $3,208.10. The lease rental for 36 months of $118.00 per month amounted to $4,248.00. The difference between the option purchase price and the rental and deposit credit at the end of the three year term is $4,690.00 less $3,208.10 or $1,481.90, which sum is approximately 32% of the list price of $4,690.00." [4 U.C.C. Rep. Serv. 795]

He then set forth the considerations and factors which determine whether a lease in form is a lease in fact or a security instrument, as these:

"1. The facts in each case control to show intention of the parties to create a security interest.

2. Reservation of title in a lease or option to purchase appurtenant to or included in the lease does not in and of itself make the lease a security agreement.

3. Lease agreement which permits the lessee to become the owner at the end of the term of the lease for a nominal or for no additional consideration is deemed intended as a security agreement as a matter of law.

4. The percentage that option purchase price bears to the list price, especially if it is less than 25%, is to be considered as showing the intent of the parties to make a lease as security.

5. Where the terms of the lease and option to purchase are such that the only sensible course for the lessee at the end of the lease term is to exercise the option and become the owner of the goods, the lease was intended to create a security interest.

6. The character of a transaction as a true lease is indicated by:

(a) Provision specifying purchase option price which is approximately the market value at the time of the exercise of the option.

(b) Rental charges indicating an intention to compensate lessor for loss of value over the term of the lease due to aging, wear and obsolescence.

(c) Rentals which are not excessive and option purchase price which is not too low.

(d) Facts showing that the lessee is acquiring no equity in leased article during the term of lease."

The conclusion of the referee was:

"In this case the option price was more than nominal, the lessee acquired no equity during the lease term, the option purchase price at the termination of the lease term was approximately an additional 32% of the list price indicating that the. parties did not intend that the lease with option to purchase created a security interest in the personal property described in the lease.

\* \* \*

"The lease with option to purchase did not create a security interest in the personal property described in the lease."

The cases from which the referee accurately found the controlling law and upon which he based his sound decision include *In re Wheatland Electric Products Co.* (W.D. Pa.), 237 F. Supp. 820, and *United Rental Equipment Co., Inc. v. Potts & Callahan,* 231 Md. 552, both discussed in 11 A.L.R.3d 1238, *et seq.*; and *In re Herold Radio & Electronics Corp.* (2d Cir.), 327 F. 2d 564, and *In re Crown Cartridge Corp.* (S.D. N.Y.), 220 F. Supp. 914, both passing on analogous statutes. See also *Burton v. Tatelbaum,* 240 Md. 280.

The written lease agreement before us, dated March 12, 1964, was for a minimum period of two months at a rental of $160 a month, plus the 3% Maryland Use Tax on rentals, and provided that "this agreement is intended and shall .be construed only as a lease agreement and not a contract of sale or otherwise." A written addendum to the lease, of the same date, provided :.

·"The above lessee shall have the right at the end of the twelve (12) month rental period to purchase the ·trailer for $3,400 less 75% of any paid in rentals.

\* \* \*

"At the termination of the twelve (12) month rental

plan, the Lessee must exercise the purchase option, return the trailer, or negotiate a new lease plan on the unit.

* * *

"Violation of any part of the lease voids Lessee's right to exercise this purchase option."

At the trial Crest called Atlantic's vice-president and general manager as its witness and, without objection from Atlantic, examined him as to the intent of the parties in making the lease. Crest's counsel suggested to him that under Atlantic's practice Pinedale could have exercised its option to buy the trailer at any time up to 36 months from the beginning of the lease in an attempt to lay a foundation for the argument he makes to us that the application of 75% of the $160 a month rental for some 27 months would have left either no purchase price or a nominal purchase price.

The answer he got from his own witness was that the terms of the lease and Atlantic's practice were the same. The witness said:

"No, that is not so. Under our lease agreement, our standard operating procedure was at anytime from the time the trailer was delivered up to twelve months thereafter the customer could exercise his option applying seventy-five per cent of the rental paid. At the end of the year, it was incumbent on the customer to contact us and obtain an extension of the purchase option * * *. If they are a good customer or paying regularly they are permitted to extend the agreement * * *."

Pinedale was neither a good customer nor paying regularly. Atlantic wrote Pinedale on September 2, 1964, that the July and August rentals were unpaid and that:

"Your continued non-payment of these rental bills has made it necessary for us to revoke the purchase option which we had extended to you on this trailer.

"If you desire, we will be glad to sell this trailer to you cash outright on the basis of its market value at

the present time or continue to rent it to you on a month to month basis at the prevailing rental rate, or to remove it from your project."

A similar letter was sent on September 11.

Atlantic's vice-president and general manager testified further that if Pinedale had paid the agreed rent for 12 months, it would have received credit for "75% of 12 months rent which was illustrated here earlier to be $1,440.00 credit against the purchase price of $3,400—if they elected to purchase the trailer after the expiration of the 12 month period Atlantic would have received $1,960 for the trailer * * *. This is approximately 55% of the $3,400 purchase price."

The written instruments and the testimony leave little, if any, doubt that the intention of the parties was to execute a lease and not a security instrument. Certainly application of the statutory tests so indicate. The continued life of the option to purchase was dependent on full compliance with the terms of the lease and the option died when the lessee became in default. *Cf. In re Wheatland, supra.* The last time lessee had the *right* to exercise the option was at a point when the amount required to meet the full purchase price of $3,400 was $1,960, or slightly less than 58% of that full purchase price. $1,960 in relation to $3,400 cannot in any way be regarded as nominal, as Judge Menchine said.

*United Rental Equipment Company, Inc. v. Potts & Callahan,* 231 Md. 552, cited above, is clearly distinguishable on the facts. There, this Court found, the lessee had the right to continue to possess the machine delivered to him as long as he paid the specified monthly rental and that at the end of 21 months the total theretofore paid of the agreed-on 85% of the monthly rentals would have amounted to the full purchase price.

*Judgment affirmed, with costs.*