The Attorney General is in receipt of your request for an opinion wherein you ask the following questions: "1. Is personal property which is subject to a lease agreement between a bank, as lessor, and a non-banking business entity or individual, as lessee, exempt from personal property ad valorem taxation under Title 68 O.S. 2370 [68-2370] and 68 O.S. 2371 [68-2371] where the lessee has control over the use of the property and the lease or a 'side' agreement contains a provision giving the lessee the option to acquire title to the personal property? "2. If the personal property described in Question One is taxable for ad valorem tax purposes, does the bank or the lessee have an obligation to file a rendition of said property with the County Assessor, as provided by Title 68 O.S. 2433 [68-2433], and if so, should the rendition be filed by the lessor or lessee ? "3. If the personal property described in Question One is taxable for ad valorem tax purposes, when is it the duty of the County Assessor or County Equalization Board to place said property on the County tax rolls? "4. If a bank is leasing personal property under the circumstances described in Question One, does the bank have a duty to furnish to the County Assessor, upon request, a list of the lessees, the leased property and the terms of the lease?" Title 68 O.S. 2370 [68-2370] (1971), levies a tax upon national banking associations doing business in the State of Oklahoma of four percent of their net income for the taxable year, and provides in subsection B that the said tax: "B. . . . shall be exclusive and in lieu of all taxes levied by the State of Oklahoma, or any subdivision thereof, on the property of any association liable to tax hereunder; provided, that nothing in this section shall be construed to exempt the real property of national banking associations from taxation to the same extent, according to its value, as other real property is taxed." 68 O.S. 2371 [68-2371](B), similarly, permits banks and credit unions organized under the laws of this State to pay a tax on their net annual income of four percent in lieu of taxes on their shares of stock or personal property. Your question focuses on personal property which has not been entered on the tax rolls because title is retained by a lessor bank. The tax payable under the above-cited statutes is exclusive of all taxes "on the property of" a bank, national banking association or credit union. Your first question contemplates lease terms which vest in a non-bank lessee exclusive control over the use of the personalty coupled with an option to acquire title. It requires a determination of whether the lessor has conveyed ownership. The statutes relating to ad valorem taxation of personal property require that all taxable personal property be listed and assessed each year, 68 O.S. 2427 [68-2427](a) (1975); but the question of ownership must be answered from other pertinent authorities. The Uniform Commercial Code "UCC" addresses that question in its provisions relating to retention of title by the seller of goods shipped or delivered to a buyer. Such a retention or reservation "is limited in effect to a reservation of a security interest." 12A O.S. 2-401 [12A-2-401](1) (1971). The UCC treats title as having been transferred to the debtor and the seller retains only a security interest in the goods. See O'Dell v. Kunkel's, Inc., 581 P.2d 878, 881 (Okl. 1978). The term "security interest," as used in the UCC, means: ". . . an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (12A O.S. 2-401 [12A-2-401]) is limited in effect to a reservation of a 'security interest' . . . . Whether a lease is intended as security is to be determined by the facts in each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." Emphasis added 12 A O.S. 1-201(37) (1971). Percival Const. Co. v. Miller Miller Auctioneers, 532 F.2d 166 (10th Cir. 1976), arose out of an action brought by the alleged owner of equipment against an auctioneer to recover proceeds from the sale of equipment at an auction. The auctioneer filed an interpleader against other parties who asserted claims to proceeds which the auctioneer paid into court. The district court granted partial summary judgment to the bank holding security interest in equipment. The Court of Appeals held in pertinent part that the lease agreement which included an option to purchase provision that set purchase price and allowed for 93% of all monthly payments to be applied to that price operated to create a security interest in the lessor under Oklahoma law. The Court pointed out that it was presented with an unambiguous contract. The intent of the parties must be determined from within the four corners of the writing, and the issue was a question of law for the Court. Addressing itself to that question, the Court stated: "The Code's definition as to when a lease is intended as a security goes on to provide that although the inclusion of an option to purchase does not of itself make the lease one intended for security, when the agreement provides that for no additional consideration, or for nominal consideration, the lessee may become the owner of the property, such provision does make the agreement one intended for security. 12A O.S. 1-201 [12A-1-201](37). In applying this measure to the fact pattern here, the lower court adopted the test set out in Crest Investment Trust, Inc. v. Atlantic Mobile Corp., 252 Md. 286, 250 A.2d 246. The critical elements of that test involve the consideration necessary for lessee to exercise the option to purchase and the percentage that consideration bears to the list price of the items leased. Under the cited case, if that percentage is less than twenty-five per cent, it is considered as showing the intent of the parties to make the lease a security. Here, the purchase option price is $8,040, which is approximately 10.6 per cent of the list price and well under the twenty-five percent guideline. Further, that price was computed by allowing for ninety-three per cent of the rentals paid by P A under the terms of the 'lease.' ". . . where the terms of the lease and option to purchase are such that the only sensible course of action for the lessee at the end of the term is to exercise that option and become owner of the goods, then the lease becomes one intended to create a security interest . . . ." 532 F.2d 171, 172. Statutes exempting property from taxation are to be strictly construed against the exemptions. London Square Village v. Oklahoma County Equalization and Excise Board, 559 P.2d 1224 (Okl. 1977). Accordingly, the answer to your first question is as follows: Personal property which is subject to a lease agreement between a bank, as lessor, and a non-banking business entity or individual, as lessee, is not exempt from personal property ad valorem taxation under 68 O.S. 2370 [68-2370] and 68 O.S. 2371 [68-2371] (1971), where the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration within the meaning of 12A O.S. 1-201 [12A-1-201](37) (1971). Your second question relates to taxable personal property which is subject to a lease agreement between a bank, as lessor, and a non-banking business entity or individual, as lessee. Is there an obligation to file a rendition of such property with the county assessor? If so, should the rendition be filed by the lessor or the lessee ? Title 68 O.S. 2433 [68-2433] (1971), provides in pertinent part: "(a) All corporations organized, existing or doing business in this State, other than railroad and public service corporations assessed by the State Board of Equalization, and other than national banks, state banks and trust companies, and building and loan associations, shall, on or before March 15 of each year return sworn lists or schedules of their taxable property within each county, to the county assessor of such county, and such property shall be listed with reference to amount, kind and value, on the first day of January of the year in which it is listed . . . ." 68 O.S. 2434 [68-2434](a) requires taxpayers to furnish a written statement showing the amount invested in property located in the county, and any other information which enables county officials to assess the property of such taxpayer. Corporations are required by the language of 68 O.S. 2433 [68-2433] to return sworn lists or schedules "of their taxable property within each county" on or before March 15 of each year. The duty to make such return, as well as the duty imposed by 68 O.S. 2434 [68-2434], is a duty relating to the taxable property of the corporate or individual taxpayer. The answer to your second question is as follows: Lessees of personal property which is subject to ad valorem taxation have an affirmative duty under 68 O.S. 2433 [68-2433] and 68 O.S. 2434 [68-2434] (1971), to file a rendition of such property with the county assessor. Your third question addresses the duties imposed upon county assessors and county boards of equalization to enter taxable personal property on the tax rolls. At what point in the calendar year is that duty dischargeable? All taxable personal property, except intangible personal property, shall be listed and assessed each year at not to exceed thirty-five percent (35%) of its fair cash value as of the first day of January. 68 O.S. 2427 [68-2427](a) (1975). All personal property shall be listed on forms provided to the taxpayer by the county assessor, and such lists shall be signed and sworn to and filed with the county assessor not later than March 15 of each year. If any personal property is not listed by that date, the county assessor shall ascertain from the best information obtainable the amount and value of such property and the owner thereof. 68 O.S. 2430 [68-2430](b) and 68 O.S. 2437 [68-2437](a) (1971). The county boards of equalization shall hold sessions, commencing on the fourth Monday in April and ending not later than the first Monday in June, for the purpose of equalizing, correcting and adjusting the assessment rolls in their respective counties. 68 O.S. 2459 [68-2459] (1971). Each county assessor in the State shall annually prepare an assessment roll and deliver the completed roll to the county board of equalization on or before the fourth Monday in April of each year, in order that the said board may correct, adjust and equalize the taxable value of property in the county. 68 O.S. 2471 [68-2471] (1971). As soon as practicable, and not later than October 1, the county assessor shall prepare tax rolls containing all adjustments by either the equalization board or the excise board which have been completed and provided to the assessor. 68 O.S. 2472 [68-2472] (1979). The statutory language cited is dispositive with respect to your third question. County assessors are required to list all non-exempt personal property on January 1 of each year. They are required to include such property on the assessment rolls delivered to the county boards of equalization and to enter it on the tax rolls as soon as practicable not later than October 1 of each year. 68 O.S. 2427 [68-2427](a) (1974); 68 O.S. 2459 [68-2459] and 68 O.S. 2471 [68-2471] (1971); and 68 O.S. 2472 [68-2472] (1979). Your fourth question seeks a determination of whether a bank, as lessor of non-exempt personal property, has a duty to furnish to the county assessor, upon request, a list of the lessees of leased property along with the terms of the lease. Title 68 O.S. 2435 [68-2435] (1974), provides in pertinent part that the county assessor shall assess and value all property, both real and personal, which is subject to assessment by him. The county assessor "shall do all things necessary" to enable him to assess and value all taxable property, ". . . determine the accuracy of assessment lists filed with him, discover and assess omitted property, and determine the taxable status of any property which is claimed to be exempt from ad valorem taxation for any reason. "(c) In the performance of his duties, the county assessor, or his duly appointed and authorized deputy, shall have the power and authority to: "(1) Go upon any premises and enter any business building or structure and view the same and the property therein, and to view, inspect or appraise any property located within his county; and "(2) Examine any person under oath in regard to the amount or value of his property." 68 O.S. 2478 [68-2478](b) provides: "If any taxpayer, or any official, employee, or agent of such taxpayer, shall fail or refuse, upon proper request, to permit the inspection of any property or the examination of any books, records and papers by any person authorized by this Code to do so, or shall fail or refuse to comply with any subpoena duces tecum legally issued under authority of this Code, such taxpayer shall be estopped from questioning or contesting the amount or validity of any assessment placed upon his property." All taxable personal property, except intangible personal property, must be listed and assessed each year. 68 O.S. 2427 [68-2427](a) (1975). Personal property which is subject to a lease agreement between a bank, as lessor, and a non-banking business entity or individual, as lessee, is not excluded from the duty of listing "all taxable personal property." The duty of the county assessor to assess and value all property, both real and personal, which is subject to assessment embraces a duty to "do all things necessary" to the assessment and valuation of all taxable personal property pursuant to 68 O.S. 2435 [68-2435] (1974). The county assessor may examine any person under oath in regard to the amount or value of that person's property, and may examine all books, records and papers respecting such property. If any taxpayer, or any official, employee or agent of such taxpayer fails or refuses, upon proper request, to permit the inspection of any property or the examination of any books, records and papers, all books, records and papers respecting that person's property are subject to subpoena duces tecum issued pursuant to lawful authority. 68 O.S. 2435 [68-2435] and 68 O.S. 2478 [68-2478](b) (1974). It is, therefore, the official opinion of the Attorney General that your questions be answered as follows: 1. Personal property which is subject to a lease agreement between a bank, as lessor, and a non-banking business entity or individual, as lessee, is not exempt from personal property ad valorem taxation under 68 O.S. 2370 [68-2370] and 68 O.S. 2371 [68-2371] (1971), where the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration within the meaning of 12A O.S. 1-201 [12A-1-201](37) (1971). 2. Lessees of non-exempt personal property have an affirmative duty under 68 O.S. 2433 [68-2433] and 68 O.S. 2434 [68-2434] (1971), to file a rendition of such property with their county assessor, and to furnish to the county assessor, upon request, all information which may reasonably be deemed necessary to enable county officials to assess the property of such taxpayer. 3. County assessors are required to list all non-exempt personal property on January 1 of each year. They are required to include such property on the assessment rolls delivered to county boards of equalization and to enter it on the tax rolls as soon as practicable, but not later than October 1 of each year. 68 O.S. 2427 [68-2427](a) (1974); 68 O.S. 2459 [68-2459] and 68 O.S. 2471 [68-2471] (1971); and 68 O.S. 2472 [68-2472] (1979). 4. County Assessors and their duly appointed and authorized deputies have the authority to examine any person under oath in regard to the amount and value of that person's property; and if any such person, or any official, employee or agent of such person, fails or refuses, upon proper request, to permit the inspection of any property or the examination of any books, records or papers, all books, records and papers respecting that person's property are subject to lawful discovery processes. (JOHN PAUL JOHNSON) (ksg)