STATE OF CONNECTICUT *v.* FRANK X. LO SACCO
(5130)

BORDEN, DALY and BIELUCH, Js.

Argued June 11—decision released September 22, 1987

*Frank X. Lo Sacco,* pro se, the appellant (defendant).

*F. Kent Sistare, Jr.,* special assistant state's attorney, with whom, on the brief, were *John Whalen* and *James G. Clark,* assistant state's attorneys, for the appellee (state).

BORDEN, J. The defendant[1] appeals from his conviction, after a trial to the court, on two informations, each charging the infraction of creating a public disturbance in violation of General Statutes § 53a-181a. The two charges arose out of incidents occurring on separate days, June 14, 1985, and June 15, 1985,[2] respectively. The defendant claims that the trial court erred (1) in

---

[1] The defendant appeared pro se in the trial court and on appeal.

[2] The information states that the date of the second incident was "6/15/86." This is clearly a typographical error.

denying his motion for judgment of acquittal on both counts, (2) in failing to advise him of his constitutional right not to testify, (3) in basing his convictions on constitutionally protected speech, (4) in allowing the state to file a substitute information on the day of trial, (5) in denying his motion for mistrial, and (6) in denying him a jury trial pursuant to General Statutes (Rev. to 1985) § 54-82b (a). We find error in part.

I

The defendant's first claim is that the trial court should have granted his motion for judgment of acquittal on both informations. We agree in part, and hold that the evidence was insufficient to support a guilty verdict with respect to the incident on June 15, 1985.

The defendant was charged with violating subdivisions (1), (2) and (3) of General Statutes § 53a-181a (a). That statute provides: "A person is guilty of creating a public disturbance when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or in violent, tumultuous or threatening behavior; or (2) annoys or interferes with another person by offensive conduct; or (3) makes unreasonable noise." The trial court concluded that the defendant violated subdivisions (1) and (2) of the statute on both dates in question.[3]

Our standard of review of the conclusions of the trier of fact, whether it be a judge or a jury, is limited. *State v. Evans*, 203 Conn. 212, 238, 523 A.2d 1306 (1987). We construe the evidence in the light most favorable to sustaining the verdict or judgment, and we will con-

---

[3] The defendant specifically requested the court to state the subdivisions of General Statutes § 53a-181a (a) that it found he had violated. The court complied and found that the defendant had violated subdivisions (1) and (2). It made no finding with respect to subdivision (3). We read this as a conclusion that the defendant did not violate that subdivision, and we therefore do not consider it further.

firm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom. *State* v. *Hanson,* 12 Conn. App. 32, 38, 529 A.2d 720 (1987).

The trier of fact in this case was the judge. Pursuant to Practice Book § 4059, the trial court rendered an oral memorandum of decision setting forth the factual basis of its decision. In the absence of a conclusion that a finding is clearly erroneous, we are bound by the court's findings. Practice Book § 4061.

The trial court found the following background facts. Prior to 1984, the defendant and the complaining witness, Deborah Parmalee, lived together and had a child, Kevin, who was born in 1979. In 1983 or early 1984, the relationship ended, and a custody proceeding ensued which was ongoing at the time of the two incidents in question. The trial court found that during the period when the defendant and Parmalee were living together, Parmalee was "constantly terrified" of the defendant. The court found support for this conclusion in the "disparity in physical size between the two individuals— the defendant being a robust, well built male, and the complainant witness being a somewhat frail and tiny female."

As to the incidents at issue, the court found that on June 14, 1985, at about 9:45 p.m., Parmalee and Kevin were returning to their home by car when the defendant "accosted" them. According to the oral memorandum of decision, the following occurred: "[T]he [complainant's] car apparently was stopped, but [the defendant] leaned up against the car, had been—had a strong odor of alcohol on his breath, was yelling[4] at the complain-

---

[4] The trial court did not, in its oral memorandum of decision, set forth the content of the defendant's speech. A review of the complainant's testimony, however, reveals the following:

"Mr. Whalen: What was he saying?

"Parmalee: Mr. Lo Sacco was yelling at me because he was saying that he had called my future husband's apartment earlier in the evening, and

ing witness, had his face up close to her. She became annoyed by this, in the light of the previous history of the tumultuous relationship [between the two], became very frightened." The trial court further found that the defendant intended to interfere and annoy, and that as a result, both Parmalee and Kevin suffered from "apprehensive fear and a state of fright." The court concluded that the defendant "[intended][5] to cause annoyance to the complaining witness . . . and . . . engaged in *violent* and *threatening* behavior, and also that he annoyed the complaining witness by *offensive* conduct." (Emphasis added.) By its finding, therefore, the court concluded that the defendant violated the first two subdivisions of General Statutes § 53a-181a (a).

With respect to the second count, the court found that on the following day, June 15, as Parmalee and Kevin were leaving Friendly's Restaurant, they were once again "accosted" by the defendant. Parmalee and Kevin were getting into the car, when the defendant, who had just arrived at Friendly's, approached the car and called to the child. The court found that "the child was very much disturbed. It caused him to run into the car and do a back-flip into the back seat, *so as to get away from the father.*" (Emphasis added.) Moreover, it concluded that Parmalee was "substantially frightened" and that the defendant's conduct created in

had asked to speak to Kevin, and had been told that Kevin was not there. And, I then started to explain to Mr. Lo Sacco that even though he had just seen us leaving from that apartment, we, in fact, had not been there very long, because Kevin and I had been grocery shopping, and that when he had been told that Kevin was not there, that was the truth. Mr. Lo Sacco said no, I know it's not the truth. You're a god damn liar. You've always been. You always will be. You never tell the truth about anything anyway, so—He just continued on. He wouldn't let me explain."

[5] The transcript states that there was "an *attempt* to cause annoyance." (Emphasis added.) We read this as a misinterpretation of the trial court's oral rendering which, in this context, must have been a statement that the defendant "*intended* to cause annoyance."

Parmalee and Kevin "apprehensive fear and a state of fright." The court concluded that the defendant intended to annoy and alarm the child and Parmalee by offensive conduct, especially in light of the incident of the prior evening and the history of their relationship. Additionally, the court concluded that the defendant engaged in "violent and threatening behavior." By its finding, once again, the court concluded that the defendant violated the first two subdivisions of General Statutes § 53a-181a (a).

On the basis of our thorough review of the testimony in this case, we conclude that two specific factual findings of the court are clearly erroneous because they are unsupported by the evidence. See generally *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 521 A.2d 221 (1987). First, there is no evidence to support the trial court's finding that Parmalee was "constantly terrified" by the defendant.[6] The bare fact that the defendant is larger than Parmalee is insufficient evidence to support such a conclusion. Second, the trial court's conclusion that Kevin, in reacting to the defendant's presence at Friendly's, was placed into "apprehensive fear and a state of fright," was "disturbed" and did "a back flip . . . to get away from his father," is also unsupported by the evidence. The only evidence on this matter was presented by Kevin himself, who was called as

---

[6] The only evidence that could conceivably be the source of this finding of fact is the following colloquy:

"Mr. Whalen: Now, at some point, during your relationship with Mr. Lo Sacco, did problems develop?

"Parmalee: Yes.

"Mr. Whalen: And, do you recall about when that took place?

"Parmalee: October of 1983.

"Mr. Whalen: And what was the nature of the problem?

"Parmalee: Mr. Lo Sacco's abuse of me."

This single reference to "abuse" in October, 1983, without further elaboration as to its meaning cannot reasonably be interpreted as evidence which supports a finding that Parmalee was "constantly terrified" by the defendant.

a defense witness. He testified that he "flipped" into the back seat because he was "startled" to see his father, since he did not expect him to be at Friendly's. There is no evidence to support a conclusion that the child feared the defendant in any way and was trying to get away from him. Nor is there any evidence to support a conclusion that Kevin was "annoyed" by the defendant.

Before turning to the issue at hand, we must recognize a constitutional limitation on the application of General Statutes § 53a-181a. By the broad language chosen by the legislature, the statute is intended to proscribe a wide range of human conduct which otherwise could not be prohibited by precise statutory language. It has been recognized that criminal statutes of this sort must be "scrutinized with particular care" since they may "make unlawful a substantial amount of constitutionally protected conduct," including speech. *Houston* v. *Hill,* 482 U.S. 451, 107 S. Ct. 2502, 2508, 96 L. Ed. 2d 398 (1987). In *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 573, 62 S. Ct. 766, 86 L. Ed. 1031 (1942), the United States Supreme Court held that when words are claimed to offend a statute, only those "having a direct tendency to cause acts of violence by the persons" to whom they are addressed may be proscribed. "[F]ighting words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace" are not protected by the first amendment. Id., 572. This limiting doctrine has been applied in Connecticut to a number of statutes. See *State* v. *Beckenbach,* 1 Conn. App. 669, 476 A.2d 591 (1984), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985) ("Fighting words" limitation applied to that portion of breach of the peace statute; General Statutes § 53a-181; which proscribes abusive language); *State* v. *Anonymous (1978-4),* 34 Conn. Sup. 689, 695, 389 A.2d 1270 (1978) ("Fighting words" limitation applied

to subdivision (2) of disorderly conduct statute; General Statutes § 53a-182; which prohibits "offensive or disorderly conduct"); see also *State* v. *Duhan,* 194 Conn. 347, 357 n.2, 481 A.2d 48 (1984). With these constitutional considerations in mind, we turn to the issue at hand, namely, whether the defendant's conduct as found by the trial court, but excluding the findings we have determined to be clearly erroneous, reasonably supports a conclusion that the defendant created a public disturbance on both occasions in question.

With respect to the incident on June 14, 1985, we conclude that the evidence was sufficient to support the trial court's determination that the defendant, with intent to cause annoyance and alarm, did annoy Parmalee by offensive conduct in violation of subdivision (2) of General Statutes § 53a-181a.[7]

"Offensive conduct" is not defined in the statute, and upon a review of Connecticut case law, we have discovered only one case that discusses the term. In *State* v. *Anonymous (1978-4),* supra, the Appellate Session of the Superior Court held that any definition of "offensive conduct" must incorporate the fighting words limitation of *Chaplinsky* v. *New Hampshire,* supra, to the extent that the conduct punished is speech. The instructions to the jury in *State* v. *Anonymous (1978-4),* supra, 694-95, were incomplete because they did not include the limiting language. Despite this omission, the court noted "evident care" in the framing of the charge which defined offensive conduct as "conduct which under contemporary community standards is so grossly offen-

---

[7] Because we hold that the trial court could reasonably have concluded that the defendant intentionally annoyed Parmalee by offensive conduct, in violation of subdivision (2) of General Statutes § 53a-181a, we need not determine whether the evidence was sufficient to prove that the child, Kevin, also was so annoyed. Moreover, we need not decide whether the evidence was sufficient to support a conclusion that the defendant engaged in violent or threatening behavior in violation of subdivision (1) of the statute.

sive to a person who actually overhears it or sees it as to amount to a nuisance." Id., 692; see also D. Wright, Connecticut Jury Instructions (2d Ed.) § 882. We agree with and adopt this definition of offensive conduct.

There was evidence that the defendant went up to Parmalee's car, placed his hands on the window, leaned his head into the car and into Parmalee's face, and proceeded to yell at her for one and one-half to two minutes, despite her repeated requests that he stop. Parmalee was frightened by the defendant because he appeared to have been drinking heavily and was very excitable, angry and upset. The transcript reveals further that Parmalee became alarmed, rolled up her window, drove away and parked her car, grabbed her son, Kevin, and rushed into her apartment, leaving the groceries she had bought in the car. We conclude that the trial court could reasonably have found such conduct to be offensive in that it was "under contemporary community standards . . . so grossly offensive to [Parmalee] . . . as to amount to a nuisance." Moreover, the trial court could reasonably have concluded that the defendant intended to cause annoyance or alarm and that Parmalee was so annoyed. In reaching this conclusion, we are mindful of the fighting words limitation; *Chaplinsky* v. *New Hampshire,* supra; and emphasize that it was the defendant's conduct in this case, and not his speech, which serves as the basis for our conclusion that the evidence supported the verdict.

Turning to the incident on June 15, 1985, we conclude that the evidence was insufficient to support the court's determination of guilt. With respect to the court's finding that the defendant engaged in "offensive conduct," we can find no evidence that would support this conclusion. The defendant merely approached the complainant's car while she was at Friendly's and called Kevin to come to him. This conduct neither constitutes "fighting words," nor can it be reasonably viewed as

"so grossly offensive . . . as to amount to a nuisance." While Parmalee may in fact have been frightened by the defendant's conduct, this is not sufficient to support a conviction when the defendant's conduct does not reach the requisite level.

Nor do we find evidence to support the trial court's conclusion that the defendant violated subdivision (1) of General Statutes § 53a-181a (a) by engaging in violent or threatening behavior. These terms are neither defined in the statute, nor have they been subject to construction by decisional law. We may, therefore, look to the common understanding of the words as expressed by their dictionary meaning. *Metropolitan District* v. *Barkhamsted,* 3 Conn. App. 53, 72, 485 A.2d 1311 (1984).

"Violent" is defined as "characterized by extreme force" and "furious or vehement to the point of being improper, unjust, or illegal." Webster, Third New International Dictionary. "Threatening" is defined as a "promise [of] punishment" or, "to give signs of the approach of (something evil or unpleasant)." Id. When two or more words are grouped together, it is possible to ascertain the meaning of a particular word by reference to its relationship with other associated words and phrases under the doctrine of noscitur a sociis. See 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 47-16; see also *State* v. *Roque,* 190 Conn. 143, 152, 460 A.2d 26 (1983); *State* v. *Duhan,* 38 Conn. Sup. 665, 668, 460 A.2d 496 (1982). Placed within the context of the other words in the statute, the word "threatening" takes on a more ominous tone. The statute proscribes "engaging in fighting or in violent, tumultuous, or threatening behavior." In *State* v. *Duhan,* supra, the Appellate Session of the Superior Court defined "tumultuous" as "riotous" and "turbulent." Fighting, by its plain meaning, involves physical force. We conclude that the language of subdivision (1) of General

Statutes § 53a-181a (a) involved in this case, namely, "violent or threatening behavior," evinces a legislative intent to proscribe conduct which actually involves physical violence or portends imminent physical violence. This conclusion is consistent with the "fighting words" limitation; see *Chaplinsky* v. *New Hampshire,* supra, 573; which must be applied when the conduct sought to be proscribed consists purely of speech. Under such circumstances, the words spoken must have a direct tendency to inflict injury or to cause acts of violence or a breach of the peace by the persons to whom they are directed. See *State* v. *Beckenbach,* supra.

We conclude that the defendant's conduct on June 15, 1985, when he walked toward the complainant's car while calling for his son to come to him, does not approach the level of violent or threatening behavior required by the statute. There was neither violence nor the threat thereof.

## II

The defendant next claims that the trial court erred by failing to advise him, prior to taking the witness stand, of his constitutional right not to testify under the fifth amendment.[8] We disagree.

We first note that the defendant is *not* claiming that the trial court failed to follow the procedure of Practice Book § 961 for establishing a waiver of his constitutional right to counsel. See generally *State* v. *Gethers,* 193 Conn. 526, 532–40, 480 A.2d 435 (1984). Rather, the defendant's limited claim is that he, as a pro se defendant, was entitled to an advisement of his constitutional right not to testify prior to testifying. While

---

[8] Since we have concluded that there was insufficient evidence to support the judgment with respect to the second conviction, that judgment must be set aside. The remaining claims of error, therefore, will be discussed only insofar as they bear on the defendant's conviction under the first information.

we recognize that the defendant does have a constitutional right not to testify; *Rock* v. *Arkansas,* 483 U.S. 44, 107 S. Ct. 2704, 2709–10, 97 L. Ed. 2d 37 (1987); *Malloy* v. *Hogan,* 378 U.S. 1, 8, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964); and recognize that it is sound judicial practice to advise a pro se defendant of this right, we conclude that under the circumstances of this case it was not incumbent upon the court to inform the defendant of this constitutional right. We are unwilling to impose upon the trial court the burden of advising a pro se defendant of every constitutional right that may be implicated by a particular decision, strategy or course of conduct he chooses during a trial. While there may be extreme situations under which a duty arises to advise a pro se defendant of his right not to testify, this case does not present one of them.

The defendant made the decision to take the witness stand on his own behalf, without any suggestion to do so by the court. Cf. *State* v. *Agresta,* 5 Conn. Cir. 242, 250 A.2d 246 (1968). Moreover, the record is clear that the defendant knew that he did not have to testify. In fact, the defendant was not only aware of his right not to testify; cf. *Cochran* v. *State,* 117 So. 2d 544, 547 (Fla. App. 1960); but acted upon it. He chose to testify concerning the events surrounding the June 15, 1985 incident, and declined to testify to the events surrounding the June 14, 1985 incident.[9]

## III

The defendant next claims that the trial court improperly based its determination of guilt on constitutionally protected speech. We disagree.

---

[9] During the defendant's testimony, the court sought to elicit some information and the defendant responded as follows: "First of all, I have the right not to testify about the events of June 14, 1985 . . . I had advised the state's attorney that I do not intend to testify about the June 14th, and I would object to the court compelling me to testify about the June 14, 1985."

In our review of the sufficiency of the evidence on the first information, involving the June 14, 1985 incident, we determined that the trial court's findings of fact reasonably supported its judgment. Those findings of fact included the following: The defendant placed his hands on the window of the complainant's car, leaned his head into the car and into her face, and yelled, very loudly and over repeated requests that he stop, for a period of one and one-half to two minutes. The trial court never made reference, in its memorandum of decision, to the content of the defendant's speech. It is clear, therefore, that its determination was based on the defendant's overall conduct, rather than the content of his speech.

## IV

The defendant next raises five claims arising out of the trial court's decision to allow the state, on the day of trial, to substitute the two original informations, each of which charged the defendant with the misdemeanor offense of disorderly conduct; General Statutes § 53a-182; with two informations charging the defendant with the infraction of creating a public disturbance; General Statutes § 53a-181a. He claims that the trial court erred (1) in denying his motion to strike the substitute informations, (2) in denying his motion for a continuance, (3) in failing to put him to plea on the substitute informations, (4) in failing to advise him sua sponte of his right under General Statutes § 51-164n (b) to elect to pay a fine for an infraction, and (5) in failing to give him an opportunity to consult with counsel. These claims are without merit.

## A

The defendant claims that the trial court abused its discretion in denying his motion to strike the substitute informations under Practice Book § 623. That rule provides, in relevant part, that "upon motion of the

defendant, the judicial authority, in his discretion, may strike the . . . substitute information, if the . . . substantive rights of the defendant would be prejudiced." The defendant claims that his substantive right to a jury trial was prejudiced since, upon being charged with infractions, rather than class C misdemeanors; see General Statutes §§ 53a-182 and 53a-36 (3); he lost his statutory right to a jury trial. See *State* v. *Weisser,* 9 Conn. App. 255, 256–57, 518 A.2d 655, cert. denied, 202 Conn. 803, 519 A.2d 1207 (1986); see also General Statutes § 54-82b (a). We have recently held that the defendant has no right to a jury trial when he is charged with the infraction of creating a public disturbance. *State* v. *Weisser,* supra.

The defendant's claim lacks merit. The infraction does not entitle the defendant to a jury trial because its maximum penalty is a fine of ninety dollars. General Statutes § 51-164n (f). The defendant loses no right to a jury trial simply because the state chooses to expose him to a risk of penalty which does not warrant a jury trial.

The defendant also claims that his substantive right to notice was affected by the substitution of the informations on the day trial began. This claim is unfounded. The infraction of creating a public disturbance, in violation of General Statutes § 53a-181a, is virtually identical in terms to the first three subdivisions of disorderly conduct in violation of General Statutes § 53a-182.[10]

---

[10] General Statutes § 53a-182 provides in relevant part: "(a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise. . . ."

General Statutes § 53a-181a is identical except that subdivision (2) proscribes only offensive conduct, and not disorderly conduct.

## B

The defendant next claims that the trial court erred in failing to grant his request for a continuance which, he claims, he needed in order to prepare to defend against the new charges. We disagree. A review of the record reveals that, although the defendant moved for a continuance, it was not because of any need to prepare his defense in light of the substitute informations. Rather, he requested it so that he could subpoena an officer as a witness. The court granted that request for a continuance to issue the subpoena.

## C

The defendant next claims that the court lacked jurisdiction over him because, although he was put to plea on the first informations, he was never put to plea on the substitute informations. This claim is meritless. The record is barren of any suggestion that the defendant endeavored to change his plea to guilty or expressed a desire to waive his right to a trial prior to the rendering of a verdict. His original pleas applied with full force to the substitute informations. See *State* v. *Piskorski,* 177 Conn. 677, 748, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Jones,* 166 Conn. 620, 628–29, 353 A.2d 764 (1974); *State* v. *Lorusso,* 151 Conn. 189, 191, 195 A.2d 429 (1963).

## D

The defendant next claims that his convictions should be set aside because the trial court failed to advise him of his right, under General Statutes § 51-164n (b), to elect "to pay the fine . . . for the infraction . . . [where] [s]uch payment shall be considered a plea of nolo contendere and shall be inadmissible in any proceeding, civil or criminal." The defendant cites no sup-

port for the proposition that the trial court has a duty to advise a pro se defendant of such a matter, nor have we discovered any. When a defendant elects to proceed without the benefit of counsel, he takes the risk that because of his inexperience and lack of knowledge, he will suffer disadvantages to which, with proper representation, he would not be subject. Furthermore, it is clear that the pro se defendant was not disadvantaged by his lack of knowledge of the law. There is absolutely nothing in this record to indicate that the defendant would have elected to pay a fine rather than proceed to trial. Indeed, it is clear that he intended to exercise his right to a trial and, in fact, repeatedly asserted his desire for a jury trial.

E

The defendant also claims that the trial court erred in failing to give him an opportunity to consult with an attorney when the substitute informations were filed. The defendant, however, did not request such an opportunity. Nor do the facts of this case suggest that the court should have done so sua sponte.

V

The defendant next claims that the trial court erred in denying his motion for a mistrial which he filed on the basis of the court's improper restriction of his attempt, on cross-examination of Parmalee, to elicit testimony of motive, bias, and interest.[11] Specifically, the defendant claims that he was precluded from questioning Parmalee about the custody hearings between him and Parmalee that were being held at the time he was

---

[11] The defendant also claimed, in his motion for a mistrial, that the court's restriction affected his ability to question Parmalee on her ability to ignore momentary, trivial or inconsequential annoyances. The defendant did not argue this to the court at the time of its ruling, and since we do not consider it to implicate a fundamental constitutional right; *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); we decline to review this claim further.

arrested; he claims that those hearings were the reason Parmalee pressed charges against him. The defendant also claims that as a result of the restriction on his cross-examination, he was forced to take the witness stand to provide this information to the court.

We acknowledge that the opportunity to cross-examine a witness for bias, interest or motive is a constitutionally protected right. See *State* v. *Cosby,* 6 Conn. App. 164, 168, 504 A.2d 1071 (1986). "The ultimate question on a motion for mistrial is whether there was ' "substantial and irreparable prejudice to the defendant's case." Practice Book § 887. A mistrial is warranted "only where it is apparent to the court that as a result of some occurrence during trial a party has been deprived of the opportunity for a fair trial." ' *State* v. *Jennings,* 5 Conn. App. 500, 505, 500 A.2d 571 (1985). Such a motion invokes the court's wide discretion." *State* v. *Kluttz,* 9 Conn. App. 686, 705, 521 A.2d 178 (1987).

The defendant did not suffer substantial and irreparable prejudice from the trial court's restriction of his cross-examination of Parmalee. Because the trial was to the court, the issue is whether the court, as the trier of fact, was deprived of information necessary to its decision that resulted in prejudice to the defendant. The record fails to reveal that this was the case. Parmalee testified on direct examination to the precise information which the defendant claims he was restricted from eliciting from her on cross-examination. She stated that, at the time of the incidents, she and the defendant were involved in "day to day hearings of our custody dispute."

The defendant's claim that he was forced to take the witness stand to provide this information also fails. In fact, a review of the relevant portions of the defendant's testimony reveals that it was largely repetitive

of Parmalee's testimony. Furthermore, the trial court, in its oral decision, specifically found that at the time of the incidents child custody proceedings were occurring. The court, therefore, was adequately informed of the potential for bias as it affected Parmalee's credibility. The court did not abuse its discretion in denying the defendant's motion for a mistrial.

## VI

The defendant's final claim is that he was entitled to a jury trial pursuant to General Statutes (Rev. to 198.) § 54-82b (a), which provided for a jury trial "in criminal actions where the maximum penalty is a fine of ninety-nine dollars or a sentence of thirty days, or both."[12] He argues that because he was fined a total of $150 on both informations, he falls within the statute. The defendant misconstrues the nature of his fine which, in fact, consisted of two separate $75 fines, totaling $150. The defendant's maximum exposure under General Statutes § 53a-181a, since it is an infraction, was a fine of "not less than thirty-five dollars and not more than ninety dollars." General Statutes § 51-164n (f). Therefore, at no time was the defendant exposed to a fine in excess of $99 on a separate criminal charge.

There is error in part, the judgment of conviction on the second information is set aside and the case is remanded with direction to render a judgment of acquittal on the charge in that information.

In this opinion the other judges concurred.

---

[12] General Statutes (Rev. to 1985) § 54-82b (a) has been amended effective October 1, 1986, by Public Acts 1986, No. 86-227. It now provides that "[t]here is no right to trial by jury in criminal actions where the maximum penalty is a fine of one hundred ninety-nine dollars or a sentence of thirty days, or both."