**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **RONALD H.
GARRISON**, Defendant–Appellant, and **THEDORA
N. JONES**, also known as **"T.J.," JERRY K. LEE,
ELSA M. MACIAS, TUA J. TUUA, SUI FAAFITI,
HAROLD D. LEE, JOSEPH D. FLORES, ANNA K.
AWEAU, TEXANA J. TOKUNAGA** and **WILBER E.
RANDLE**, Defendants

NO. 15988

(CR. NO. 89–1235)

OCTOBER 8, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

2

OPINION OF THE COURT BY HEEN, J.

We affirm Defendant–Appellant Ronald H. Garrison's (Defendant) conviction on four counts of promoting a dangerous drug in the second degree. Hawai'i Revised Statutes (HRS) § 712–1242(1)(c) (Supp. 1992).

HRS § 712–1242(1)(c) provides:

> **Promoting a dangerous drug in the second degree.** (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
>
> * * *
>
> (c) Distributes any dangerous drug in any amount.

Defendant's conviction came after the second jury trial of the charges against him. The first trial ended in a mistrial when the jury could not agree on a verdict. In the second trial, a Honolulu Police Department undercover officer testified that on four occasions in a dark bar in downtown Honolulu he purchased cocaine from Defendant, either directly or through an intermediary. In the transactions, Defendant agreed to sell the undercover officer a "paper," the street term for a packet of cocaine, or "girl," another street term for cocaine itself. Although the narcotics were introduced in evidence during the first trial, they were not introduced in the second trial. We do not know whether they were available for the second trial.

In attacking his conviction, Defendant raises several meritless arguments, which we will discuss *seriatim.*

### 1.

Defendant first asserts that the trial court erred in denying his motion for judgment of acquittal at the end of the State's case.

The question is whether, viewing the evidence in the light most favorable to the State, while giving full play to the fact finder's right to weigh the evidence, determine credibility, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *State v. Yamashiro,* 8 Haw. App. 595, 817 P.2d 123 (1991).

### a.

Defendant argues that the evidence was not of sufficient quality and probative value to support the verdicts because the narcotics he allegedly distributed were not introduced into evidence.

*State v. Schofill,* 63 Haw. 77, 621 P.2d 364 (1980), is dispositive of Defendant's first argument. As in the present case, the defendant in *Schofill* was also charged with knowingly distributing cocaine after he agreed to sell cocaine to an undercover police officer. However, the transaction was called off after the defendant attempted to deliver four packets containing less than the agreed amount of cocaine. When the case was presented to the grand jury, the undercover police officer testified that, based on his past experience with cocaine, the white powdery substance in the packets looked like cocaine. After the jury returned a true bill, the defendant moved to dismiss the indictment. The trial court granted the motion on the ground, *inter alia,* that the State's grand

jury evidence was "incompetent and prejudicial." *Id.* at 78, 621 P.2d at 366. The supreme court reversed the trial court, holding that, in accordance with the definition of the term "to distribute" in HRS § 712–1240 (1985),[1] "the crime of promoting a dangerous drug by distributing the same is complete where, with the specific intent to sell, the accused has offered to sell the contraband." *Id.* 63 Haw. at 81, 621 P.2d at 368.

The evidence in this case was stronger than that in *Schofill*. Here, the undercover officer testified that Defendant had agreed to sell him cocaine, that he was familiar with cocaine, and that the substances Defendant delivered to him on the four occasions appeared to be cocaine or cocaine resin. That evidence was sufficient to prove distribution, and it was not necessary to introduce the cocaine itself into evidence.

### b.

Defendant further contends, however, that the State failed to prove that he had the specific intent to distribute the narcotics. He argues that "the specific intent to sell cannot be inferred by an offer." Defendant's actions in this case clearly support an inference of specific intent. *Id.*

---

[1] Hawai'i Revised Statutes (HRS) § 712–1240 (1985) provides:

**Definitions of terms in this part.** In this part, unless a different meaning plainly is required:

\* \* \*

"To distribute" means to sell, transfer, prescribe, give, or deliver to another, or to leave, barter, or exchange with another, *or to offer or agree to do the same.*

(Emphasis added.)

### c.

Defendant also contends that the undercover officer's identification of Defendant was faulty because Defendant is black and the transactions allegedly took place in a dark saloon where there were many other black or dark–skinned men.

However, the undercover officer's testimony indicates that all the transactions took place at very close range. Consequently, it cannot be said that the evidence of Defendant's identity was insufficient.

### 2.

Defendant next argues that the trial court erred in denying his requested instruction outlining at length a number of factors that could affect the accuracy of the undercover officer's identification of Defendant which the jury should consider when appraising the officer's identification testimony.

The factors listed in the instruction can undoubtedly affect the accuracy of a witness's identification of a defendant in any given situation. However, the instruction included the following factors that were not supported by any evidence: whether the absence or presence of other members of Defendant's race in the courtroom could have affected the witness's identification; the witness's emotional state; the witness's capacity to observe; any exchange of information between witnesses; any racial difference between the witness and Defendant; the frequency of contacts between the witness and people of Defendant's race if their races were different; any inconsistency in the identification testimony of any identification witnesses; and whether other independent evidence has been introduced bearing on identification.

Since there was no evidence in the trial that could have assisted the jury in evaluating the effect of those factors on the accuracy of the identification testimony, it was not an abuse of discretion to refuse the instruction. *See State v. Lincoln*, 3 Haw. App. 107, 643 P.2d 807 (1982).

Citing *State v. O'Daniel*, 62 Haw. 518, 616 P.2d 1383 (1980), Defendant also argues that he was entitled to the instruction because it related to his defense — identification. However, the court gave other instructions that adequately covered the factors the jury should consider in judging the credibility of the witnesses. Those factors were applicable to the identification testimony, and the court's instructions provided sufficient basis for defense counsel to argue to the jury all of the pertinent factors listed in the proposed instruction.

### 3.

Defendant contends that the trial court erred in admitting into evidence the photographic lineup which was exhibited to the undercover officer in an out–of–court identification of Defendant because the State failed to prove a chain of custody of the photographs. We find no error.

The issue of chain of custody was considered under similar, though not identical, circumstances in *State v. Olivera*, 57 Haw. 339, 555 P.2d 1199 (1976). In that case, the defendant challenged the introduction into evidence of a card containing his fingerprints. A police officer testified that the prints on the card were the defendant's and the card was in the same condition as it was when he had completed fingerprinting the defendant. The officer testified that he had delivered the card to his superior officer,

but did not know what security had been accorded to the card after that.

The supreme court held that, unlike the situation where the evidence in question consists of easily adulterated materials such as drugs or chemicals, where an object has been positively identified and the testimony establishes that its condition is unchanged, proof of chain of custody is not required. *Id.* 57 Haw. at 344, 555 P.2d at 1202.

In this case, the police officer who compiled the photographic array and showed it to the undercover officer identified the exhibit at trial and testified that the photographs were in the same order as when the undercover officer saw them.

Defendant argues for the first time on appeal that the photographic array sent a clear message to the jury that he had a prior criminal record. However, Defendant has failed to indicate what was so highly suggestive about the array. Moreover, even if he had done so, *State v. Reiger*, 64 Haw. 510, 644 P.2d 959 (1982), disposes of the issue against Defendant.

### 4.

In support of his argument that the trial court erred in denying his motion to dismiss for pre–indictment delay, Defendant argues that he suffered prejudice because the narcotic substances he allegedly sold were not available for the trial. However, since, as discussed above, the narcotics were not necessary to prove the charges in this case, Defendant was not prejudiced by their absence or the pre–indictment delay.

### 5.

In his attack on the denial of his Rule 48, Hawai'i Rules of Penal Procedure (HRPP) (1977) motion to dismiss

for pre–trial delay, Defendant does not challenge any of the lower court's findings of fact set forth in the order of denial. He challenges only the trial court's conclusion of law that,

> [o]n October 29, 1990, the running of the time was tolled because of the failure of counsel for Defendants' [sic] Randle and Garrison to object to the delay due to the unavailability of Defendant Flores' counsel. HRPP Rules 48(c)(3), (7).

Defendant argues that (1) he was not obligated to object to the delay and, since he had "reserved the Rule 48 rights in a previous status conference, no waiver occurred; and (2) this court may reach this matter as plain error."

Defendant has not indicated where in the record he "reserved the Rule 48 rights." The State's answering brief notes that the reservation occurred at a status conference on January 29, 1990, prior to Defendant's first trial, which had ended in a mistrial; however, the record contains no transcript for that date.

Even if we could find the reservation in the record, it would not assist Defendant. Upon the grant of a mistrial, the trial becomes a nullity and the second trial will proceed as if there had been no previous trial. *United States v. Akers*, 702 F.2d 1145, 1148 (D.C. Cir. 1983). A motion filed prior to the first trial does not carry over to the second trial. *State v. Harden*, 750 S.W.2d 666, 668 n.1 (Mo. App. 1988).

Moreover, even if the reservation did carry over, since Defendant has not challenged any of the lower court's findings of fact or the conclusion of law that

> as of February 21, 1991, only four months and 16 days had run. Even assuming that the State should be charged with any of the delay between February 21, 1991 and March 19, 1991, the date

of the granting of Defendant's Motion to continue
trial date, this would leave only five months and
15 days chargeable to the State[,]

he has failed to carry his burden of showing that the lower
court erred.

### 6.

Defendant argues that the trial court erred in denying
his "motion to dismiss due to discriminatory jury selec-
tion." However, our review of the record indicates that,
although Defendant challenged the array on the ground of
discriminatory jury selection prior to the first trial, he
failed to raise the discrimination issue prior to the second
trial. Instead, he raised the issue orally at his sentencing
hearing on February 20, 1992. The motion to dismiss
that was made prior to the first trial did not survive the
mistrial. *Harden*.[2]

---

[2] When the sentencing judge, who was also the trial judge,
remarked on Defendant's failure to raise the issue earlier, Defendant
produced what appears to be a copy of an undated letter to the "Clerk of
the Court" reading, *inter alia*,

THe [sic] foregoing concerns a motion conserning [sic] a conflict of
interest. !am [sic] a pre–trial imate, [sic] and ifeel [sic] ihave [sic]
this right [sic] court pursuant to Johnson v. puckett [sic] 90–1081,
Equal protection [sic] Rights in racial discrimination in jury selec-
tion process.

In the letter, Defendant also asks for "withdrawal" of his trial counsel,
Matthew Chung (Chung), and transmits copies of the letters to the
Office of Disciplinary Counsel (ODC) regarding counsel.

On December 6, 1991, Chung filed a motion to withdraw as de-
fense counsel. At a December 9, 1991 hearing on the motion, Chung
informed the court that *after the trial*, Defendant started complaining
to ODC about a lack of communication between himself and Defen-
dant.

We deem it reasonable to infer from the foregoing that the letter to
the clerk of the court was written after the second trial and did not
serve to raise the issue of discriminatory jury selection before the
second trial.

However, we may notice as plain error matters that were not brought to the attention of the trial court "to correct errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings[,]' " *State v. Fox,* 70 Haw. 46, 56, 760 P.2d 670, 676 (1988) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S. Ct. 391, 392, 80 L. Ed. 555, 557 (1936)), and where it is necessary "to serve the end of justice or to prevent the denial of fundamental rights." *State v. Kahalewai,* 56 Haw. 481, 491, 541 P.2d 1020, 1027 (1975). We find no plain error.

The right to a trial jury selected from a representative cross–section of the community is an essential component of the fundamental right to an impartial jury guaranteed by the Sixth Amendment to the United States Constitution made binding on the states by the Fourteenth Amendment. *Taylor v. Louisiana,* 419 U.S. 522, 528, 95 S. Ct. 692, 697, 42 L. Ed. 2d 690, 697 (1975). Article I, § 14, of the Hawai'i State Constitution guarantees a defendant in a criminal case the same right to an impartial jury.

A jury selection process that systematically excludes a distinctive group violates the fair cross–section requirement. *Taylor,* 419 U.S. at 528, 95 S. Ct. at 697–98, 42 L. Ed. 2d at 697. Where the party challenging the jury selection process as discriminatory establishes a *prima facie* case of invidious discrimination, the burden of proof shifts to the state "to rebut the presumption of unconstitutional action[.]" *Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S. Ct. 1221, 1226, 31 L. Ed. 2d 536, 542 (1972).

Citing *Washington v. Davis,* 426 U.S. 229, 242, 96 S. Ct. 2040, 2049, 48 L. Ed. 2d 597, 608–09 (1976), Defendant claims that a prima facie case may be established "by showing that the totality of the relevant facts

gives rise to an inference of discriminatory purpose." The argument is without merit.

To establish a *prima facie* case, Defendant was required to show,

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury–selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579, 587 (1979).

Defendant clearly met the first requirement of *Duren*. However, he has failed to show where in the record there is evidence to satisfy the second and third requirements of *Duren*, and we have found none in the record of the second trial. The arguments Defendant referred to in his opening brief were made before the first trial and were also unsupported by evidence.

Defendant argues that "[t]he verdict must be reversed simply because an improperly selected jury deprives the accused of the Constitutional right to a jury trial." Since Defendant has not shown that the jury in this case was improperly selected, he is not entitled to the result he seeks.

### 7.

Defendant finally argues that the sentence imposed upon him of ten years' incarceration is "cruel, unusual and disproportionate," and that "[t]he trial court abused its discretion and committed clear error when it imposed

a ten year sentence when counsel requested probation. [sic]"

Defendant does not indicate how the factors set forth in HRS § 706–621(2) (Supp. 1992), favoring the withholding of an authorized sentence of imprisonment and imposing a sentence of probation apply in this case, or why the sentence was cruel and unusual punishment. Moreover, our examination of the record, including the probation office's pre–sentence report in this case, indicates that none of the factors of the statute are applicable. Thus, Defendant was not entitled to a sentence of probation.

Affirmed.

*Reinhard Mohr* (*Stephen M. Shaw* on the amended opening brief) for defendant–appellant.

*Caroline M. Mee*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.