**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000155
25-JUN-2021
08:13 AM
Dkt. 38 SO**

NO. CAAP-20-0000155

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
KEITH T. WATANABE, also known as
Keith Takeo Watanabe, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
KANEʻOHE DIVISION
(CASE NO. 1DTA-19-01547)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Keith T. Watanabe, also known as
Keith Takeo Watanabe (**Watanabe**), appeals from the First Amended
Judgment and Notice of Entry of Amended Judgment, entered on
January 15, 2020, in the District Court of the First Circuit,
Kaneʻohe Division (**District Court**).[1/]  Following a bench trial,
Watanabe was convicted on two counts: (1) Operating a Vehicle
Under the Influence of an Intoxicant (**OVUII**), in violation of
Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) (Supp. 2018);[2/] and
(2) Consuming or Possessing Intoxicating Liquor While Operating a

---

[1/]    The Honorable William M. Domingo presided.

[2/]    HRS § 291E-61(a)(1) provides, in relevant part:

        (a)  A person commits the offense of operating a
vehicle under the influence of an intoxicant if the person
operates or assumes actual physical control of a vehicle:

        (1)    While under the influence of alcohol in an
               amount sufficient to impair the person's normal
               mental faculties or ability to care for the
               person and guard against casualty[.]

Motor Vehicle or Moped (**Open Container**), in violation of HRS § 291-3.1(b)(2007).[3/]

On appeal, Watanabe contends that: (1) the District Court conducted a defective Tachibana[4/] colloquy; (2) there was no substantial evidence to support Watanabe's Open Container conviction; and 3) there was no substantial evidence to support Watanabe's OVUII conviction.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Watanabe's points of error as follows:

(1) Watanabe argues that "the District Court's attempted Tachibana colloquy was erroneous and deficient and as a result it cannot be concluded that Watanabe waived his right to testify knowingly, intelligently, and voluntarily." We agree.

In State v. Martin, 146 Hawaiʻi 365, 463 P.3d 1022 (2020), the Hawaiʻi Supreme Court summarized the relevant case law as follows:

> Our law protects both the right to testify and the right not to testify. State v. Celestine, 142 Hawaiʻi 165, 169, 415 P.3d 907, 911 (2018). Tachibana v. State, 79 Hawaiʻi 226, 900 P.2d 1293 (1995), established the requirement that when a defendant in a criminal case indicates an intention not to testify, the trial court must advise the defendant of the right to testify and must obtain an on-the-record waiver of the right. 79 Hawaiʻi at 236, 900 P.2d at 1303. We stated that this advisement should consist of informing the defendant (1) that they have a right to testify, (2) that if they want to testify, no one can prevent them from doing so, and (3) that if they testify, the prosecution will be allowed to cross-examine them. 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7. We also stated that in connection with the privilege against self-incrimination, the defendant should also be advised (4) that they have a right not to testify and (5) that if they do not testify, then the jury can be instructed about that right. Id. (citations omitted). In a bench trial,

_____

[3/] HRS § 291-3.1(b) provides:

No person shall possess, while operating a motor vehicle or moped upon any public street, road, or highway, any bottle, can, or other receptacle containing any intoxicating liquor which has been opened, or a seal broken, or the contents of which have been partially removed.

[4/] Tachibana v. State, 79 Hawaiʻi 226, 236 n.7, 900 P.2d 1293, 303 n.7 (1995).

2

> defendants must be advised that if they exercise their right not to testify, no inference of guilt may be drawn for exercising this right, i.e., that a decision not to testify cannot be used against a defendant by the judge in deciding the case. State v. Monteil, 134 Hawaiʻi 361, 371-72, 341 P.3d 567, 577-78 (2014).
>
> After Tachibana, we also held that a second component of the Tachibana colloquy involves the court engaging in a true "colloquy" with the defendant. Celestine, 142 Hawaiʻi at 170, 415 P.3d at 912, citing State v. Han, 130 Hawaiʻi 83, 90-91, 306 P.3d 128, 135-36 (2013). This requires "a verbal exchange between the judge and the defendant 'in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights.'" Celestine, 142 Hawaiʻi at 170, 415 P.3d at 912 (citing Han, 130 Hawaiʻi at 90, 306 P.3d at 135 (emphasis omitted)).
>
> . . . .
>
> A defendant's right to testify is violated when the colloquy does not establish "an objective basis for finding that [the defendant] knowingly, intelligently, and voluntarily gave up" their right to testify. Han, 130 Hawaiʻi at 91, 306 P.3d at 136. Courts look to the totality of the facts and circumstances to determine whether a waiver of the right to testify was voluntarily and intelligently made. 130 Hawaiʻi at 89, 306 P.3d at 134.

146 Hawaiʻi at 378-79, 463 P.3d at 1035-36 (footnotes omitted).

The supreme court also has recognized that "[i]n conducting the colloquy, the trial court must be careful not to influence the defendant's decision whether or not to testify." Tachibana, 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7. Likewise, "the court's advisory to the defendant must maintain an 'even balance' between a defendant's right to testify and the right not to testify." Monteil, 134 Hawaiʻi at 370, 341 P.3d at 576 (citing State v. Lewis, 94 Hawaiʻi 292, 295, 12 P.3d 1233, 1236 (2000)).

Here, after the State presented its witnesses, the District Court engaged in the following colloquy with Watanabe:

> THE COURT: Okay.
>
> All right. Mr. Watanabe, can you stand please?
>
> How old are you, sir?
>
> [WATANABE]: Thirty-seven.
>
> THE COURT: And how many years of schooling have you had?
>
> [WATANABE]: Um -- all the way up to a few years of college.
>
> THE COURT: Okay. And in the last 48 hours, have you

3

had any alcohol, drugs, or medication?

[WATANABE]: I've had alcohol in the last 48 hours.

THE COURT: Okay. But your mind is clear today though?

[WATANABE]: Yes.

THE COURT: All right. You understand when I'm talking to you at this stage?

[WATANABE]: Yes.

THE COURT: All right. Have you ever testified before in any court proceeding?

[WATANABE]: I don't think so.

THE COURT: Okay. And do you understand that you have the constitutional right not to make any incriminating statements?

[WATANABE]: Ye -- I believe so.

THE COURT: You understand that you have the constitutional right to remain silent and not testify at this trial?

[WATANABE]: Yes.

THE COURT: You understand that if you do not testify, the court cannot hold it against you that you're not testifying?

Do you understand that?

[WATANABE]: Yes.

THE COURT: Do you understand that if you elect to testify, anything you say can and may be used against you?

[WATANABE]: Yes.

THE COURT: Do you understand that if you elect to testify, you'll be subject to cross examination where the prosecutor will be permitted to ask you questions and you will be required to answer those questions?

[WATANABE]: Yes.

THE COURT: Although you should confer with your attorney whether to testify or not, you understand that the final decision is entirely up to you?

[WATANABE]: Yes.

THE COURT: No one can prevent you from testifying if that is what you wish to do. Do you understand that?

[WATANABE]: Yes.

THE COURT: Do you have any questions about what I've explained to you?

[WATANABE]: No.

THE COURT: Understanding all that I've explained to

you, do you wish to testify today?

[WATANABE]: No.

THE COURT: Okay. The court finds that Mr. Watanabe has intelligently, knowingly, and voluntarily waived his right to testify.

As the State acknowledges on appeal, the District Court did not properly colloquy Watanabe regarding his right to testify. Without more, the court's questions – "And do you understand that you have the constitutional right not to make any incriminating statements?" and "Do you understand that if you elect to testify, anything you say can and may be used against you? – did not maintain an "'even balance' between [Watanabe's] right to testify and the right not to testify." Monteil, 134 Hawaiʻi at 370, 341 P.3d at 576 (citing Lewis, 94 Hawaiʻi at 295, 12 P.3d at 1236). Rather, the District Court advised Watanabe of his right not to testify in a manner that implied he would be incriminating himself by testifying. Further, as the State points out, "it is not clear that [Watanabe] knew he had the *right* to testify." At most, he was advised that "if [he] elect[ed] to testify," anything he said "can and may be used" against him, and that he would be subjected to cross-examination. The court did not directly inform Watanabe that he had a right to testify. See State v. Philling, No. CAAP-18-0000653, 2019 WL 6790773, at *3 (Haw. App. Dec. 12, 2019) (SDO) (noting that "although the District Court used the phrase 'if you elect to testify' in various queries, the court did not inform [the defendant] that he had a right to testify, as is required"). Therefore, the record does not demonstrate that Watanabe's waiver of his right to testify was knowingly, intelligently and voluntarily made.

"Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307 (citing State v. Silva, 78 Hawaiʻi 115, 125, 890 P.2d 702, 712 (App. 1995)). Here, the record does not contain any indication of what Watanabe would have said if he had testified, and the State concedes that the defective colloquy was not

harmless.  See State v. Hoang, 94 Hawaiʻi 271, 279, 12 P.3d 371, 379 (App. 2000) ("In general, it is inherently difficult, if not impossible, to divine what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case.").  Based on our review of the record, we cannot conclude that the District Court's deficient colloquy was harmless beyond a reasonable doubt.

We therefore vacate Watanabe's OVUII and Open Container convictions.

(2) Watanabe contends there was no substantial evidence to support his Open Container conviction for two reasons.  First, he argues that the District Court abused its discretion in admitting State's Exhibit "1," a beer can recovered from Watanabe's vehicle, into evidence, "where the State failed to establish the requisite chain of custody."  Second, Watanabe asserts that, "assuming *arguendo*[] that the can was properly introduced into evidence, there was still no substantial evidence that the liquid in the can was 'intoxicating liquor.'"

Regarding the chain of custody of evidence, the supreme court has held:

> In showing chain of custody, all possibilities of tampering with an exhibit need not be negated.  Chain of custody is sufficiently established where it is reasonably certain that no tampering took place, with any doubt going to the weight of the evidence.  An accounting of hand-to-hand custody of the evidence between the time it is obtained and the time admitted to trial is not required in establishing chain of custody.  And despite the mere possibility that others may have had access to the exhibits, there exists a reasonable certainty that no tampering took place.

State v. DeSilva, 64 Haw. 40, 41-42, 636 P.2d 728, 730 (1981) (citations omitted).

The supreme court has further stated:

> [The] judge determines the sufficiency of physical evidence identification in light of the article's nature, circumstances surrounding its custody and the likelihood of intermeddlers tampering with it. A more elaborate foundation is required to identify evidence that is easily substituted, such as marijuana, than is necessary to identify physical evidence with unusual characteristics, such as money, a gun, clothing and a body, or matches and glasses.  Unless [the] decision to admit evidence over a chain-of-custody objection constitutes a clear abuse of discretion, it will not be overturned. [Citations omitted.]

6

Id. at 42, 636 P.2d at 730 (brackets in original) (quoting State v. Mayes, 286 N.W.2d 387, 391 (Iowa 1979)).  See State v. Garrison, 10 Haw. App. 1, 9, 860 P.2d 610, 614-15 (1993) ("[U]nlike the situation where the evidence in question consists of easily adulterated materials such as drugs or chemicals, where an object has been positively identified and the testimony establishes that its condition is unchanged, proof of chain of custody is not required." (citing State v. Olivera, 57 Haw. 339, 344, 555 P.2d 1199, 1202 (1976))).

Here, Honolulu Police Department (**HPD**) Officer Alema Everett (**Officer Everett**) testified that on the night of the incident, he recovered a "Fruitlands . . . Modern Times beer can" from the center console of Watanabe's vehicle.  According to Officer Everett, the can "was cool to the touch[,]" and he observed a liquid in the can that "smelled like beer."  Officer Everett testified that, after collecting the can, he poured the liquid into an amber vial for testing by the HPD.  He described the process of sealing and taping the empty can and the amber vial with "red evidence tape" and submitting them into evidence. Officer Everett confirmed that the can in the evidence bag at trial was the can he retrieved the night of the incident. Specifically, Everett testified that he recognized his initials on the evidence tape label that he had put on the bag.[5]  When asked to open the bag and confirm "whether that can is the can that you retrieved that night[,]" Officer Everett responded, "Yes, that's the can."  When asked how he recognized the can, Officer Everett responded, "[I]t's the same can that I photographed in the report."  Additionally, Officer Everett answered "[y]es" when asked, "[I]t's essentially the same condition as when you retrieved it that night?"

Because the evidence at issue was physical evidence with specific markings, i.e., a "Fruitland Modern Times" beer can, and not "easily adulterated materials such as drugs or

_____

[5]     During voir dire examination by defense counsel, Officer Everett also testified regarding green tape on the bag, stating that "[u]sually the green tape is from the SIS specialist," and that it was not Officer Everett's signature on the green tape.

chemicals," Garrison, 10 Haw. App. at 9, 860 P.2d at 614-15, a "more elaborate foundation" was not required to identify the beer can. DeSilva, 64 Haw. at 42, 636 P.2d at 730 (quoting Mayes, 286 N.W.2d at 391). As the State notes, Watanabe's arguments "relate to the fact that the beer can had been in police custody for a period of time, and do not dispute that Officer Everett identified the beer can as the same one he recovered in the same condition he recovered it." Thus, Watanabe's arguments relate to the weight of the evidence, not its admissibility. See DeSilva, 64 Haw. at 41, 636 P.2d at 730. We conclude that the foundation laid by the State, based on Officer Everett's testimony, including his positive identification of the can, was sufficient to establish with reasonable certainty that no tampering with the can took place. Accordingly, the District Court did not abuse its discretion in admitting the can into evidence.

Watanabe next contends there was no substantial evidence that the liquid in the can was "intoxicating liquor." More specifically, he argues that "[t]he evidence cited by the court in its verdict that purportedly established the liquid in the can was beer was Officer Everett's lay opinion that it smelled like beer, the name of the product on the label, 'Fruitland Modern Times Beer' and the warning on the label regarding the consumption of alcoholic beverages."

> The standard of review for sufficiency of the evidence is well established; namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged. Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

State v. Bowman, 137 Hawaiʻi 398, 405, 375 P.3d 177, 184 (2016) (quoting State v. Grace, 107 Hawaiʻi 133, 139, 111 P.3d 28, 34 (App. 2005)).

In order to convict Watanabe for violating HRS § 291-3.1(b), the State was required to prove beyond a reasonable doubt

that (1) Watanabe, (2) while operating a motor vehicle or moped upon any public street, road, or highway, (3) possessed "any bottle, can, or other receptacle containing any intoxicating liquor which ha[d] been opened, or a seal broken, or the contents of which ha[d] been partially removed."  HRS § 291-1 (2007) provides that "[i]ntoxicating liquor means the same as the term is defined in section 281-1."  (Internal quotation marks omitted.)  Under HRS § 281-1,[6/] "intoxicating liquor" includes beer.

At trial, Officer Everett testified that he observed "the can in open view" in Watanabe's vehicle, which was parked with the engine running, just off Kamehameha Highway, less than a foot from the solid white line.[7/]  Officer Everett determined that the can was "an open container," and identified the can he recovered as a "Fruitlands . . . Modern Times beer can" that "was cool to the touch."  Officer Everett further testified that he had "experience with alcoholic beverages[,] . . . [p]articularly . . . in aluminum cans[.]"  When asked, "From your observations[,] [w]hat was in the can?" Officer Everett responded, "[A] liquid . . . that smelled like beer."

Upon review of the record, and viewing the evidence in the strongest light for the prosecution, we conclude there was substantial evidence that Watanabe, while operating a motor vehicle upon a public highway, possessed an open container containing an intoxicating liquor.  Accordingly, on this record, the evidence was sufficient to support Watanabe's Open Container conviction.

---

[6/]    HRS § 281-1 (2007) states:

"Liquor" or "intoxicating liquor" includes alcohol, brandy, whiskey, rum, gin, okolehao, sake, beer, ale, porter, and wine; and also includes, in addition to the foregoing, any spirituous, vinous, malt or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, in whatever form and of whatever constituency and by whatever name called, containing one-half of one per cent or more of alcohol by volume, which are fit for use or may be used or readily converted for use for beverage purposes.

[7/]    Officer Everett further testified that Kamehameha Highway is a public street, road or highway in the State of Hawaiʻi, City and County of Honolulu.

(3) Watanabe also contends there was no substantial evidence to support his OVUII conviction.

In order to convict Watanabe of OVUII, the State was required to prove beyond a reasonable doubt that (1) Watanabe (2) operated or assumed actual physical control of a vehicle upon a public street, road, or highway,[8] while (3) under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty. HRS § 291E-61(1)(a). "'Impair' means to weaken, to lessen in power, to diminish, to damage, or to make worse by diminishing in some material respect or otherwise affecting in an injurious manner." HRS § 291E-1.

Watanabe asserts:

> Unlike many OVUII cases, there was no evidence in this case of traffic violations or aberrant driving. Also absent was evidence of blood or alcohol test results or a [standard field sobriety] test. As such, the only evidence cited by the court were Officer Everett's observations.

However, this court has previously ruled that "[s]ufficient evidence for an OVUII conviction may be found without a field sobriety test when based on other signs of impairment." State v. Eaton, No. CAAP-19-0000442, 2020 WL 3077931 at *1 (Haw. App. June 10, 2020) (SDO); see also State v. Bayardelger, No. CAAP-19-0000344, 2020 WL 3056088, at *1 (Haw. App. June 9, 2020) (SDO) ("We have previously held that there was substantial evidence to support an OVUII conviction based on indicia of the defendant's alcohol impairment, even without considering evidence of the defendant's performance on a field sobriety test . . . ."); State v. Ferrer, 95 Hawaiʻi 409, 427, 23 P.3d 744, 762 (App. 2001) ("The police officer's observations of the field sobriety exercises, other than the HGN test, should be placed in the same category as other commonly understood signs of impairment, such as glassy or bloodshot eyes, slurred speech, staggering, flushed face, labile emotions, odor of alcohol or driving patterns." (quoting State v. Meador, 674 So. 2d 826, 832 (Fla. Dist. Ct.

_____

[8] HRS § 291E-1 (2007), the definitions section for HRS Chapter 291E, provides, in relevant part, that the term "'[o]perate' means to drive or assume actual physical control of a vehicle upon a public way, street, road, or highway . . . ."

App. May 15, 1996))).

At trial, Officer Everett testified that Watanabe's vehicle was parked with the engine running "less than a foot from . . . the solid white line" on Kamehameha Highway, a public street, road or highway. Due to how close the driver's side was to the roadway, Officer Everett "went to the passenger's side of the vehicle" and observed Watanabe "sitting in the driver's seat -- or slumped over . . . the wheel with both hands on the dash." Officer Everett stated that he unsuccessfully attempted to wake Watanabe by yelling at him. Officer Everett then testified:

> So I went to the driver's side door and opened the door. The car was unlocked. And as I called out to him, I -- I shook him, and that -- that eventually got him out from his slumber, and he sat back in his -- kinda slowly just lethargically sat back in his seat and slumped -- slumped back into . . . his chair.

Officer Everett further testified that after Watanabe awoke, "his eyes were red, watery, and glassy." Additionally, a strong odor of alcohol was coming from Watanabe's mouth. Officer Everett asked Watanabe for "his vehicle paperwork, . . . his license, registration, insurance." According to Officer Everett:

> [Watanabe] wasn't able to provide anything. He just . . . he pointed with his finger and he just kept touching the dashboard. And I let that go on probably for like close to a minute. But . . . when he wasn't able to -- to provide any -- anything, then kind of moved on from that point.

Officer Everett continued:

> I asked him . . . to exit the vehicle to -- to perform a . . . standard field sobriety test. However, based on -- on as he stepped out of the vehicle on both feet, he was swaying and . . . he kinda just fell back onto the rear driver's side door of his vehicle. And at that point, based on his actions, the strong odor of alcohol, all those things, the roadway condition that determined it wouldn't be safe to administer a field sobriety test as he wasn't -- wasn't even able to stand up for more than five seconds on his own, . . . I figured it'd be more dangerous if anything.

Upon review of the record, and viewing the evidence in the strongest light for the prosecution, we conclude there was substantial evidence that Watanabe operated a vehicle while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty. Accordingly, on this record, the evidence was

sufficient to support Watanabe's OVUII conviction.

Therefore, IT IS HEREBY ORDERED that the First Amended Judgment and Notice of Entry of Amended Judgment, entered on January 15, 2020, in the District Court of the First Circuit, Kaneʻohe Division, is vacated.  The case is remanded to the District Court for further proceedings consistent with this Summary Disposition Order.

DATED:  Honolulu, Hawaiʻi, June 25, 2021.


On the briefs:

Alen M. Kaneshiro
for Defendant-Appellant.

Chad M. Kumagai,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge